

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 24, 2020.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 7 CASE** |
| | § | |
| | § | |
| **JUNE ALICE WILLENE ROBERTS,** | § | **CASE NO. 18-50444-CAG** |
| Debtor. | § | |

---

| | | |
|---|---|---|
| **HENRY G. HOBBS, JR., ACTING UNITED** | § | |
| **STATES TRUSTEE.** | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| **v.** | § | **ADV. NO. 18-05260-CAG** |
| | § | |
| | § | |
| **JUNE ALICE WILLENE ROBERTS,** | § | |
| Defendant. | § | |

### MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART THE COMPLAINT OBJECTING TO DISCHARGE OF JUNE ALICE WILLENE ROBERTS

This Memorandum Opinion resolves adversary proceeding _Henry G. Hobbs, Jr. v. June Alice Willene Roberts_, Adv. No. 18-05260-CAG. On October 18, 2019, this Court concluded a two-day trial before taking the matter under advisement. The Court has reviewed the entire

1

record before it, including all admitted exhibits. The Court also considered the testimony and credibility of all witnesses. Additionally, the Court has considered all evidentiary objections raised and sustained in making its findings of fact.

**JURISDICTION**

As an initial matter, the parties have stipulated to, and Court finds it has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. (ECF No. 23, at ¶¶ 2, 5.1–5.4). This matter is a core proceeding as defined under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409(a). This matter is referred to the Court pursuant to the District's Standing Order of Reference. The Court makes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND**

On March 2, 2018 (the "Petition Date"), June Alice Willene Roberts ("Debtor", "Defendant", or "Roberts") filed a voluntary Chapter 7 petition for relief with her initial Schedules ("Initial Schedules"), and Statement of Financial Affairs ("Initial SOFA"). (Case No. 18-50444-CAG, ECF No. 1). On May 15, 2018, Defendant filed amended versions of her petition, Schedules B, D, E/F, I, J, and Statement of Financial Affairs ("Amended SOFA"). (Case No. 18-50444-CAG, ECF No. 7). On October 29, 2018, Defendant filed further amended, Schedules A/B, C, D, E/F, G, H, I, J, and a Second Amended Statement of Financial Affairs ("Second Amended SOFA"). (Case No. 18-50444-CAG, ECF Nos. 26, 27). As noted herein, Trustee seeks a denial of Debtor's discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(4)(a), (a)(5).[1]

**FINDINGS OF FACT**

### I.    Stipulated Facts

---

[1] Unless otherwise noted, all references are to Title 11, U.S.C. *et seq.*

On August 20, 2019, the Parties submitted a Joint Pre-Trial Order with their statement of stipulated facts which the Court now adopts. *See* (ECF No. 23, §§ 5.1–5.73).

## II.    The Parties' Contentions

Trustee contends this case is about June and Jason Roberts' attempt to "stay one step ahead of creditors." Trustee argues Defendant should be denied discharge due to conduct related to: (1) undisclosed income from Green Energy Xperts; (2) undisclosed income from Large Loss Consulting; (3) transfers from Large Loss Consulting; (4) the financial records of Large Loss Consulting; (5) the transfer of assets to Mike Sanders; (6) the purchase and transfer of Roger Roberts' RV; (7) and undisclosed gifts to Defendant's father-in-law. (ECF No. 1, at ¶¶ 7–66). These specific disputed factual issues are set out below and addressed more fully under their respective counts.

First, Plaintiff alleges that Large Loss Consulting was created to do consulting on construction projects. (ECF No. 23, at ¶ 6.1). Defendant asserts that it was created only to complete the roofing projects on eight contracts previously held by Green Energy Xperts. (*Id.*)

Second, Plaintiff asserts that Defendant was the owner of Large Loss Consulting. Defendant denies that allegation. (ECF No. 23, at ¶ 6.2).

Third, Plaintiff alleges that Defendant cannot satisfactorily explain all her financial transactions. (ECF No. 23, at ¶ 6.3). Specifically, Plaintiff alleges that Defendant cannot satisfactorily explain all the financial transactions of Large Loss Consulting. Defendant denies that she cannot satisfactorily explain all of her financial transactions. (*Id.*) Defendant asserts that she cannot explain all of the financial transactions of Large Loss Consulting agreement because it was not her business and she had nothing to do with its operation. (*Id.*)

Fourth, Plaintiff alleges that Defendant failed to keep, maintain, or preserve adequate books and records of Large Loss Consulting's business transactions. (ECF No. 23, at ¶ 6.4). Defendant denies this allegation and asserts that it was not her business, she had nothing to do with its operation, and had no obligation to keep, maintain or preserve its books and records. (*Id.*)

Fifth, Plaintiff alleges that by failing to ensure Large Loss Consulting kept, maintained, or preserved adequate books and records of its business transactions, Defendant failed to keep, preserve, or maintain records necessary from which her financial condition and business transactions might be ascertained. (ECF No. 23, at ¶ 6.5). Defendant denies this allegation and asserts that Large Loss Consulting was not her business and she had no obligation to keep, preserve or maintain records for that entity. (*Id.*)

Sixth, Plaintiff alleges that Defendant concealed and transferred assets with the intent to hinder, delay, or defraud creditors. Defendant denies this allegation. (ECF No. 23, at ¶ 6.6).

Seventh, Plaintiff alleges that Defendant made false oaths in this case with the requisite intent to deceive or with reckless indifference to the truth. Defendant denies these allegations. (ECF No. 23, at ¶ 6.7).

Eighth, Plaintiff asserts that the payments of the mortgage of Gerald Dean Roberts through Green Energy Xperts and through Defendant's personal bank account constitute gifts that Defendant did not disclose on her Statement of Financial Affairs. (ECF No. 23, at ¶ 6.8). Defendant denies that allegation. Defendant asserts that prior to Defendant's sale of the stock in Green Energy Xperts, Green Energy Xperts made payments on Gerald Dean Roberts' home mortgage as compensation for services rendered by him to Green Energy Xperts. (*Id.*) For nine months after Defendant sold the stock in Green Energy Xperts, Defendant and her husband

continued to make payments on the mortgage, which they considered to be compensation for his help with the Roberts' three children and not as a gift. (*Id.*)

Ninth, Plaintiff asserts that Defendant should have either listed ownership of an RV on her Schedules or transfer of an RV on her Original Statement of Financial Affairs. (ECF No. 23, at ¶ 6.9). Defendant denies this allegation and asserts that Jason Roberts purchased the RV and moved it to Odessa, Texas to use for housing while Large Loss Consulting was doing work there. (*Id.*) Several months later, the RV was sold to one of Large Loss Consulting's roofing contractors for services provided by the contractor. (*Id.*) Because Roger Roberts had never been paid for the RV, Large Loss Consulting issued the check to him after the RV was transferred to the contractor. (*Id.*)

Tenth, Plaintiff alleges that Defendant's 2017 tax return is inconsistent with every version of Defendant's Statement of Financial Affairs. (ECF No. 23, at ¶ 6.10). Defendant asserts that the 2017 tax return was prepared and filed 6 months after the petition and schedules were filed and was prepared from information not available to Defendant at the time the bankruptcy case was filed. (*Id.*) Further, she relied on the services of a reputable accounting firm for preparation of the 2017 tax return. (*Id.*)

Eleventh, Plaintiff alleges that Defendant has testified falsely during her meetings of creditors and in her deposition. Defendant denies this allegation. (ECF No. 23, at ¶ 6.11).

Twelfth, Defendant further asserts that the $20,000.00 used by Mike Sanders to purchase the boat, jet ski and golf cart and which came from the account of Your Roof Warranty, LLC was a draw or distribution from Your Roof Warranty to Mike Sanders. (ECF No. 23, at ¶ 6.12).

Each area of scrutinized conduct relates to one or more code provisions allowing a denial of discharge as set forth below.

**A. 11 U.S.C. § 727(a)(2)(A)—Transfers from Large Loss Consulting; the transfer of assets to Mike Sanders.**

Trustee contends that Defendant is not entitled to a discharge of her debts because she transferred or concealed assets with an intent to defraud creditors.  Specifically, Trustee alleges Defendant: (1) transferred more than $215,575.73 from Large Loss Consulting to Your Roof Warranty, LLC for no consideration in order to keep money away from Creditors; and (2) sold a boat, jet ski, and golf cart to Mike Sanders in a sham transaction. Defendant denies these allegations.

**B. 11 U.S.C. § 727(a)(3)—The Financial Records of Large Loss Consulting.**

Additionally, Trustee contends that Defendant's debts are not dischargeable because Defendant unjustifiably concealed, falsified, or failed to keep or preserve documentation of her financial condition and business transactions.  Specifically, Trustee alleges Defendant did not keep adequate books and records for Large Loss Consulting because: (1) she did not keep a general ledger, and the ledger contained with the company checkbook was thrown away or misplaced; (2) the spreadsheets produced to explain company transactions are unreliable;[2] (3) the profit and loss statements do not match the bank statements; (4) the spreadsheets were not used in completing the 2017 tax return;  (5) the records show Jason Roberts received approximately $93,000 in commissions but the tax returns show none; (6) the 2017 tax returns do not include a Schedule C; and (7) although Mike Sanders received $31,000 he never received a Form 1099. Defendant denies these allegations.

**C. 11 U.S.C. § 727(a)(4)(A)—Undisclosed income from Green Energy Xperts; undisclosed income from Large Loss Consulting; transfers from Large Loss Consulting; the transfer of assets to Mike Sanders; failure to list an RV; and undisclosed gifts to Defendant's father-in-law.**

---

[2] As evidenced by characterizing a payment to the marina as "office rent."

6

Trustee contends that Defendant is not entitled to a discharge of her debts because she knowingly and fraudulently made numerous omissions and/or false statements in her sworn Schedules of Assets and Liabilities ("Schedules"), Statement of Financial Affairs ("SOFA"), and at her § 341 meeting of creditors.  Specifically, Trustee alleges Defendant: (1) underreported income from Green Energy Xperts on her SOFA, Amended SOFA, and Second Amended SOFA; (2) failed to list gross revenues of her sole proprietorship Large Loss Consulting on her SOFA, Amended SOFA, and Second Amended SOFA; (3) asserts she was merely a "nominee" for husband Jason Roberts on her Amended SOFA and Second Amended SOFA despite  stating she was the owner on an Assumed Name Certificate filed with the Texas Secretary of State and company bank account; (4) did not list the transfer of money from her company Large Loss Consulting to her husband's company Your Roof Warranty, LLC; (5) sold her boat, jet ski, and golf cart to Mike Sanders when the actual purchaser was Your Roof Warranty, LLC; (6) failed to list gifts made to her father-in-law on Question 13 on her SOFA, Amended SOFA, and Second Amended SOFA; (7) failed to list the transfer of the RV on Question 18 of her SOFA, Amended SOFA, and Second Amended SOFA; and (8) made numerous false statements made during her § 341 meeting of creditors.  Defendant denies these allegations.

### D.  11 U.S.C. § 727(a)(5)—Transfers from Large Loss Consulting.

Trustee contends that Defendant failed to satisfactorily explain the loss of assets or deficiency of assets to meet her liabilities.  Specifically, Trustee contends Defendant failed to explain what happened to the assets of Large Loss Consulting. Defendant denies these allegations.

## ANALYSIS

### I.    Non-Dischargeability Under 11 U.S.C. § 727

7

Section 727 of the Bankruptcy Code states:

**(a)** The court shall grant the debtor a discharge, unless—

**(1)** the debtor is not an individual;

**(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

> **(A)** property of the debtor, within one year before the date of the filing of the petition; or

> **(B)** property of the estate, after the date of the filing of the petition;

**(3)** the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

**(4)** the debtor knowingly and fraudulently, in or in connection with the case—

> **(A)** made a false oath or account;

> **(B)** presented or used a false claim;

> **(C)** gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

> **(D)** withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

**(5)** the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727(a)(1)–(5)(West 2020).

Section 727(a) provides that a court must grant a discharge unless one or more grounds

for denial of discharge under § 727(a)(1)–(12) is proven to exist. The burden of proving a denial

of discharge under § 727(a)(1)–(12) lies with the party objecting to discharge, and is by a preponderance of the evidence. ***Beaubouef v. Beaubouef, (In re Beaubouef)***, 966 F.2d 174, 178 (5th Cir. 1992). Here, Trustee objects to Defendant's discharge pursuant to §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5). The Court addresses each of Trustee's objections to discharge in turn.

### A. 11 U.S.C. § 727(a)(2)(A)—Transfers from Large Loss Consulting; the transfer of assets to Mike Sanders.

To sustain an objection under § 727(a)(2)(A), the objecting party must show: (1) the act complained of was done within the one year before the date of the filing of the petition; (2) the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done; (3) the act was committed by the debtor or a duly authorized agent of the debtor; and (4) the act was done with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code. ***In re Croft***, 500 B.R. 823, 851 (Bankr. W.D. Tex. 2013) (citing ***Village of San Jose v. McWilliams***, 284 F.3d 785, 793–94 (7th Cir. 2002)). For purposes of analyzing what constitutes a transfer under § 727(a)(2), the definition of transfer is to be applied as broadly as possible. *See **id.***

The final requirement to deny a discharge under § 727(a)(2)(A) requires that the act complained of must be done with intent to hinder, delay, or defraud a creditor. ***Pavy v. Chastant (In re Chastant)***, 873 F.2d 89, 90–91 (5th Cir. 1989). Further, the intent must be actual intent and not constructive intent. ***First Tex. Sav. Ass'n, Inc. v. Reed (In re Reed)***, 700 F.2d 986, 991–92 (5th Cir. 1983). That said, a finding of actual intent may be based on circumstantial evidence or inferences from a course of conduct. ***In re Chastant***, 873 F.2d at 91; *see also*, ***Devers v. Bank***

*of Sheridan* (*In re Devers*), 759 F.2d 751, 753–54 (9th Cir. 1985). Moreover, The Fifth Circuit

has identified the following factors that may provide evidence of actual intent to defraud:

> (i) a lack or inadequacy of consideration, (ii) a familial or close relationship
> between the parties, (iii) retention of possession, benefit, or use of the property in
> question, (iv) the financial condition of the party sought to be charged both before
> and after the transaction in question, (v) the existence or cumulative effect of a
> pattern or course of conduct after the incurring of a debt, onset of financial
> difficulties or threat of suits by creditors, and (vi) the general chronology of the
> events and transactions at issue.

*TSCA-234 Ltd. P'ship v. Moseman* (*In re Moseman*), 436 B.R. 398, 409 (Bankr. E.D. Tex.

2010) (citing *Pavy*, 873 F.2d at 91).  Here, Trustee contends Defendant violated § 727(a)(2)(A)

by: (1) transferring $215,575.73 from Large Loss Consulting to Your Roof Warranty, LLC for

no consideration; and (2) transferring Defendant's boat, jet ski, and golf cart to Mike Sanders in

a sham transaction.

> **i.    The transfer of $215,575.73 from Large Loss Consulting to Your Roof
> Warranty, LLC.**

First, Trustee contends Defendant violates § 727(a)(2)(A) by transferring property of the

Debtor ($215,575.73) from her company Large Loss Consulting to Your Roof Warranty, LLC

for no consideration, and with intent to hinder, delay, or defraud creditors. Defendant claims the

funds belonged to Your Roof Warranty, LLC, and were merely deposited in Large Loss

Consulting's bank account until Your Roof Warranty, LLC established its own bank account, at

which time the funds were transferred. The testimony at trial and Trustee's exhibits support

Defendant's explanation.

Examining the *Pavy* factors, it is undisputed that Defendant shares a close familial

relationship with husband Jason Roberts—the majority owner of Your Roof Warranty, LLC. The

evidence also shows the transfer occurred after potential liability arose against Defendant in a

Texas State Court lawsuit.  (Ex. 47). Nevertheless, the chronology of transactions in and out of

Large Loss Consulting's bank account between September 29, 2017 and October 2, 2017 support Defendant's explanation.

On September 29, 2017,[3] a cashier's check for $264,575.73 made payable to "Large Loss Consulting Group" (Your Roof Warranty, LLC's d/b/a) was deposited into Large Loss Consulting's Frost Bank account 5084. (*See* Ex. 5 at FR000091–92; *see also* Ex. 20, at P. 2). The next day, Large Loss Consulting issued Check No. 1344 to Your Roof Warranty, LLC for $215,575.73 (exactly $49,000.00 less than the cashier's check). (Ex. 5, at FR000232). Two days later, Your Roof Warranty, LLC opened Frost Bank account 7109, and on that day deposited Large Loss Consulting Check No. 1344, bringing Large Loss Consulting's account 5084 October 2, 2017.[4] closing balance to $215,575.73. (Ex. 9, at JR009). These transactions match Defendant's description of the events.

Because the cashier's check was always made payable to "Large Loss Consulting Group"—the dba of Your Roof Warranty, LLC—no consideration was required to transfer the funds to their rightful owner. While suspicious, the evidence submitted clearly shows the funds were originally payable to Your Roof Warranty, LLC's dba "Large Loss Consulting Group." Therefore, the transfer of $215,575.73 from Large Loss Consulting to Your Roof Warranty, LLC was not a transfer of Debtor's assets.

Accordingly, the Court finds the transfer of $215,575.73 from Large Loss Consulting to Your Roof Warranty, LLC for no consideration was not a violation of § 727(a)(2)(A).

### ii. The transfer of Defendant's boat, jet ski, and golf cart.

Second, Trustee contends Defendant violates § 727(a)(2)(A) by transferring property of the debtor—a boat, jet ski, and golf cart—with intent to hinder, delay, or defraud creditors.

---

[3] The Court takes judicial notice that September 29, 2017 was a Friday.
[4] The Court takes judicial notice that October 2, 2017 was a Monday—the next business day after the $264,575.73 cashier's check was deposited in Large Loss Consulting's bank account.

Defendant and her husband testified at trial that Defendant's boat,[5] jet ski,[6] and golf cart[7] were sold to Mike Sanders in exchange for $20,000.00—a sum paid directly to Attorney Dan Roberts. The evidence supports Defendant's position.

Specifically, Trustee's Exhibit 43 is a cashier's check dated February 14, 2018 from "Remitter: Mike Sanders" payable to "C. Daniel Roberts & Associates" for $20,000.00. As to the adequacy of consideration, at trial, Jason Roberts credibly testified that he looked at other comparable property online when determining a price for the items. At trial, Jason Roberts— Defendant's husband—testified that Mike Sanders is Jason Roberts' partner in Your Roof Warranty, LLC. This is unquestionably a close familial relationship. Nevertheless, Defendant disclosed the transfer of personal property in response to Question 18 on her Initial SOFA. (Case No. 18-50444-CAG, ECF No. 1, at 55). While the Trustee contends the cashier's check used to purchase the items was drawn from Your Roof Warranty, LLC's account at Frost Bank and not from an account held exclusively by Mike Sanders, it makes little difference for the purposes of § 727(a)(2)(A) as Defendant received adequate consideration and properly disclosed the transfer.

Because the Defendant disclosed the transfer of property to creditors, and received reasonable consideration, the Court finds the sale and disclosure of Defendant's boat, jet ski, and golf cart to compensate counsel did not violate § 727(a)(2)(A).

The Court finds Trustee has not met his burden to deny Debtor's discharge under § 727(a)(2)(A) as it pertains to the transfer of assets from Large Loss Consulting to Your Roof Warranty, LLC, or the transfer of Debtor's transfer of her boat, jet ski, and golf cart to Mike Sanders.

---

[5] A "2001 Rinker 27' cubby cabin." (Case No. 18-50444-CAG, ECF No. 1, at P. 55).
[6] A "2005 Honda jet ski." (Case No. 18-50444-CAG, ECF No. 1, at P. 55).
[7] A "2001 EZ Club Car golf cart." (Case No. 18-50444-CAG, ECF No. 1, at P. 55).

### B. 11 U.S.C. § 727(a)(3)—The Financial Records of Large Loss Consulting.

The Court may deny Defendant's discharge under § 727(a)(3) if Trustee can demonstrate that Defendant failed to keep records that "are those of creditors and that the [Debtor] is required to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." *Koufman v. Sheinwald*, 83 F.2d 977, 980 (1st Cir. 1936); *see also Texas Nat. Bank of Beaumont v. Edson*, 100 F.2d 789, 791 (5th Cir. 1939).

Under § 727(a)(3), the debtor's obligation is to keep records in a form that enables a creditor to ascertain the debtor's current financial condition and to follow her business transactions in the past. *See In re Juzwiak*, 89 F.3d 424 (7th Cir. 1996) (denying discharge because there was no proof of payroll records). As such, the Court must examine the materiality of the missing business transactions. In doing so, a plaintiff must show by a preponderance of the evidence that the defendant failed to keep or preserve financial records and the failure to do so prevented a party from ascertaining the defendant's financial condition or business transactions. Once a plaintiff establishes a prima facie case, the defendant has the burden of establishing that his failure to keep adequate records was justified under all circumstances of the case. *In re Lee*, 309 B.R. 468, 477–78 (Bankr. W.D. Tex. 2004).

Section 727(a)(3) requires debtors present a full financial picture to the trustee, creditors, and Court. *Tow et al v. Henley (In re Henley)*, 480 B.R. 708, 781 (Bankr. S.D. Tex. 2012) (citation omitted). "The failure to maintain financial records justifies a denial of discharge." *Id.* (citations omitted). Notably, a trustee or a creditor need not prove any fraudulent intent by a debtor to deceive creditors; rather, mere negligence in failing to keep and produce records is sufficient to deny a debtor's discharge under § 727(a)(3). *Id.* (citations omitted).

At trial, Defendant's husband Jason Roberts—Large Loss Consulting's President—testified that Large Loss Consulting did not keep any kind of general ledger; instead, a ledger was kept in the company checkbook. Jason Roberts also testified that he cannot find the checkbook register and believes it was either lost or thrown away. Nevertheless, Defendant produced all bank records for Large Loss Consulting's Frost Bank account 5084. (Ex. 5). The account statements Defendant produced notate every deposit and debit throughout the life of Large Loss Consulting's account, as well as provide photocopies of every deposit slip and check written from the company checkbook. (Ex. 5).

While the loss of the checkbook ledger, and failure to keep a general ledger may not comport with Generally Accepted Accounting Principles, that is not the standard set out by § 727(a)(3). Instead, the Court may consider if the inadequacy of the records is justified under the circumstances. *First United Bank & Tr. Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 438–39 (Bankr. E.D. Tex. 2013). Factors the Court may consider include: (1) the education, experience, and sophistication of the debtor; (2) the volume of the debtor's business; (3) the complexity of the debtor's business; (4) the amount of credit extended to the debtor in his business; and (5) any other factors the court may consider in the interest of justice. *Id.* (citations omitted).

Here, both the Defendant and her husband Jason Roberts testified as to their education, experience, and sophistication. Notably neither the Defendant, nor Jason Roberts—the President of Large Loss Consulting—have college degrees. Further, credible testimony was heard from Cynthia Maskal,[8] and Don Peterson,[9] who did not consider Defendant sophisticated as to

---

[8] Cynthia Maskal testified she is a book keeper for Burkhart Peterson—the accounting firm utilized by Defendant for preparation of personal and business taxes as well as business book keeping for Green Energy Xperts. Mrs. Maskal further testified that she was familiar with Defendant and Green Energy Xperts.

business matters.  Moreover, Keith Schmitz[10] testified that most of the QuickBooks information small business owners (such as Defendant and her husband) provide is in fair to poor condition. Second, the volume of Large Loss Consulting's business is limited, as the company was only operated for seven (7) months, and all company transactions were provided in the form of bank statements from Frost Bank and photocopies of deposits and checks. (Ex. 5).

The Court finds Defendant provided adequate financial records by which a party could ascertain Defendant's business transactions, given the circumstances of the case.  Therefore, Defendant's discharge is not denied under § 727(a)(3).

### C. 11 U.S.C. § 727(a)(4)(A)—Undisclosed income from Green Energy Xperts; undisclosed income from Large Loss Consulting; transfers from Large Loss Consulting; the transfer of assets to Mike Sanders; failure to list an RV; and undisclosed gifts to Defendant's father-in-law.

Section § 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account. . . ."  Here, Trustee alleges Defendant made numerous omissions and false statements under oath including:

a.  Despite receiving $14,000 in wages and $12,000 in dividends in 2017, Defendant underreported her 2018 income from Green Energy Xperts by reporting only $4,681.90 in wages, on her Statement of Financial Affairs, Amended Statement of Financial Affairs, and Second Amended Statement of Financial Affairs.

b.  Defendant did not list the gross revenues of her sole proprietorship, Large Loss Consulting, on her Statement of Financial Affairs.

c.  Defendant asserted on her Amended Statement of Financial Affairs and Second Amended Statement of Financial Affairs that she was merely a

---

[9] Don Peterson testified that he is a Certified Public Accountant, and a named partner at Burkhart Peterson. Mr. Peterson testified that he did not prepare Defendant's books or tax returns, but had several conversations with Jason Roberts. Mr. Peterson further testified that he was aware of Large Loss Consulting and Your Roof Warranty as early as February of 2018, and was under the impression both were Jason Robert's companies.

[10] Keith Schmitz is case manager and tax preparer for Burkhart Peterson, and was deposed prior to trial as a representative for Burkart Peterson.

"nominee" for her husband Jason Roberts, even though she filed the Assumed Name Certificate with the Secretary of State stating she was the owner and opened a bank account for the company, stating she was the owner.

d. Defendant did not list the transfer of money from Large Loss Consulting, which was owned by her, to Your Roof Warranty, LLC, owned by her husband and Mike Sanders.

e. Defendant stated that she sold her boat, jet ski, and golf cart to Mike Sanders when the actual purchaser was Your Roof Warranty, LLC, a company owned 51% by her husband.

f. Defendant did not list the gifts she made to her father-in-law Gerald Dean Roberts on Question No. 13 of the Statement of Financial Affairs.

g. Defendant did not list the transfer of the RV on Question No. 18 of the Statement of Financial Affairs.

(ECF No. 24, at ¶ 87).

In general,

[t]he purpose of Chapter Seven of the Bankruptcy Code is to give individual debtors a "fresh start," and the heart of this goal is embodied in § 727's discharge provisions. *See, e.g.,* S. Rep. No. 989, 95th Cong., 2d. Sess. 7 (1978), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5793. "The discharge provisions require the court to grant the debtor a discharge of all his debts except for very specific and serious infractions on his part."

*In re Ichinose*, 946 F.2d 1169, 1172 (5th Cir. 1991).

Consistent with this general approach, it is the plaintiff who has the burden of proving an objection to discharge under § 727(a)(4)(A). *Beaubouef*, 966 F.2d at 178. "The elements of an objection to discharge under § 727(a)(4)(A) must be proven by a preponderance of the evidence." *Id.* Those elements are: "'(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.'" *Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005) (quoting *Beaubouef*, 966 F.2d at 178). "An omission of an asset can constitute a false oath." *Pratt*, 411 F.3d at 566.

Notably, "Bankruptcy Courts have not construed § 727(a)(4) generally to impose strict liability for the schedules and false statements." *Interfirst Bank Greenville, N.A., v. Morris (In re Morris)*, 58 B.R. 422, 427 (Bankr. N.D. Tex. 1986). Innocent mistakes and inadvertence are generally not sufficient to result in denial of a discharge. *See e.g., Mozeika v. Townsley (In re Townsley)*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996)("The denial of a discharge under § 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence. Rather, to sustain an objection to discharge under this section, the debtor must have willfully made a false statement with intent to defraud his creditors.").

Nevertheless, a debtor need not have acted deliberately to deceive. *Beaubouef*, 966 F.2d at 178 ("It makes no difference that [the debtor] does not intend to injure his creditors when he makes a false statement. Creditors are entitled to judge for themselves what will benefit, and what will prejudice, them.") (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (*per curiam*)). The requisite intent can be shown by establishing that the debtor acted with reckless disregard for the truth, which can be proven by circumstantial evidence. *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001) ("[S]tatements [made] with fraudulent intent–or reckless indifference to the truth . . . can be proven by circumstantial evidence."); *Beaubouef*, 966 F.2d at 178 ("[T]he existence of more than one falsehood, together with [the debtor's] … failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive."); *accord, Ford v. Mellon Fin. Serv. Corp. (In re Ford)*, Civ. A. No. H-85-3551, 1986 WL 14997, at *4 (S.D. Tex. Dec. 18, 1986) ("When impeached, Debtor candidly admitted that expediency motivated the deception. Such reckless disregard for the truth is circumstantial evidence of the requisite fraudulent intent and will alone support denial of

discharge."); *In re Sullivan*, 204 B.R. 919, 942–43 (Bankr. N.D. Tex. 1997)("A series of even innocent mistakes or omissions can constitute evidence of a pattern of reckless disregard for the truth.  .  .  .  Thus, courts look at the circumstances surrounding the omissions to determine whether they were intentional.") (citing *Morris*, 58 B.R. at 428).

Here, Defendant filed bankruptcy on March 2, 2018. (Case No. 18-50444-CAG, ECF No. 1). Defendant's first meeting of creditors was originally held on April 10, 2018 and later continued and concluded on May 15, 2018. (*see* ECF No. 23, ¶¶ 5.12–5.14).  The same day— May 15, 2018—Defendant submitted her Amended Schedules I & J, and Amended SOFA. (Case No. 18-50444-CAG, ECF No. 7).  Accordingly, prior to the conclusion of her meeting of creditors, Defendant filed both her Initial SOFA (Case No. 18-50444-CAG, ECF No. 1) and Amended SOFA (Case No. 18-50444-CAG, ECF No. 7).  Defendant's ownership of Large Loss Consulting (as her dba); the sale of Defendant's boat, jet ski, and golf cart to Mike Sanders; the regular payment of her father-in-law's mortgage of $1,430.62; and Defendant's $4681.90 in income for 2017 (although underreported), were all included in Defendant's initial disclosures (Case No. 18-50444-CAG, ECF No. 1, at PP. 2, 49, 52, 55).  After amending her Petition, Schedules, and SOFA, Defendant further disclosed: (1) $808,192.64 in gross deposits for Large Loss Consulting; and (2) Large Loss Consulting's payment of "$17,400 to Jason Roberts' uncle for an RV which was then traded to a subcontractor for materials and labor valued at $19,000, all in connection with the business of Jason Roberts, not debtor."  (Case No. 18-50444-CAG, ECF No. 7, at PP. 14, 18).

Trustee contends Defendant failed to disclose monthly payments of $1,430.62 to her father-in-law Gerald Dean Roberts's mortgage as a gift on Question 13.  Nevertheless, on Defendant's initial Schedule J, Defendant lists $1,430.62 under Part 2 Question 20 as an ongoing

monthly "other real property expense." Then on October 29, 2018, Defendant filed her Amended Schedules and Second Amended SOFA and lists $1,430.62 under Part 2 Question 19 specifying it as "father's mortgage payment." (ECF No. 26, at P. 42).  At trial, Defendant testified that she never listed the mortgage payment as a gift, because she viewed it as a payment to her father-in-law for his help watching Defendant's three children. Moreover, Defendant testified she listed the ongoing payment as an expense because she was trying to be as accurate as possible.

Trustee's contention that Defendant failed to disclose the transfer of money ($215,575.73) from Large Loss Consulting to Your Roof Warranty, LLC was previously addressed. Simply stated, the $215,575.73 transferred from Large Loss Consulting to Your Roof Warranty, LLC was a transfer of funds made payable to Your Roof Warranty, LLC.

Finally, the Court need not reach the nominee issue. Whether Defendant is a "nominee" is a question of legal significance. At trial, both Defendant and her husband Jason Roberts testified to their lack of education and sophistication—especially as it pertains to the law. Moreover, Defendant testified that the first time she had heard the word "nominee" was when her attorney explained it to her, and thereafter she believed it was the most appropriate label for her role in Large Loss Consulting.  The issue under § 727(a)(4)(A) is not whether Defendant makes correct legal interpretations and assertions on her Schedules and Statements, but rather whether she knowingly or fraudulently withheld information of material significance. Defendant does not deny filing the DBA for Large Loss Consultants and establishing the company's Frost Bank account 7109 on behalf of her husband. Further, Defendant has disclosed her ownership of the dba Large Loss Consulting in her initial filings. (Case No. 18-50444-CAG, ECF No. 1). Defendant's reliance on counsel in labeling her role as "nominee" does not rise to the level of a knowingly false statement or omission under § 727(a)(4)(A).

Trustee's most troubling allegation under § 727(a)(4)(A) is Defendant's underreporting of income from Green Energy Xperts, Inc. in 2017. While Defendant has always disclosed income for 2017, the evidence at trial shows Defendant earned more than her reported $4,681.90. At trial Defendant did not dispute that this statement was both false, and made under oath. Moreover, it is well settled that any omission of income from a debtor's statements is material. **Beaubouef**, 966 F.2d at 178.

At trial Defendant acknowledged that she received fourteen paychecks of $816.38 ($1,000 per week less withholdings) for work done reconciling Green Energy Xperts books and records between January and April of 2017 when the business was sold. (Exs. No. 12, at WF000364, 373, 389, 439, 458, 495, 525, 551, 580, 604, 645, 674, 703, 734). Defendant further testified that although she had worked prior to marriage, during the course of her seventeen (17) year marriage to Jason Roberts, her primary responsibility was to care for their home and three (3) minor children. Trustee's Exhibit 57 supports this testimony by revealing the total 2016 yearly cost of afterschool care for the children was merely $200.00. (Ex. 57). Nevertheless, Defendant listed $4,681.90 as wages and income for 2017 on her Initial SOFA, Amended SOFA, and Second Amended SOFA. (*See* Exs. 1–4). Because Defendant's statements were false, made under oath, and materially related to the bankruptcy, the real question becomes whether Defendant knew the statements were false and whether she made them with fraudulent intent.

Whether Defendant knew her income disclosure was or was not false is speculative at best. At trial, testimony was elicited from Burkhart Peterson accounting professionals that Defendant was unsophisticated and likely never saw 2017 W2's, 1099's or IRS Wage Transcripts. Moreover, the IRS Wage Transcript that indicates Defendant's 2017 wages and dividends from Green Energy Xperts was requested by Burkhart Peterson months after

Defendant submitted her initial and Amended SOFA. (Ex. 32). Finally, both Defendant and Keith Schmidt's testimony calls into question whether Defendant ever actually reviewed and signed her 2017 tax return. (ECF No. 30). Fortunately, the Court need not address the issue of Defendant's knowledge, because no evidence was provided to indicate Defendant underreported her income with intent to defraud creditors or reckless disregard for the truth.

As mentioned, a debtor's fraudulent intent may be establshed through actual evidence of intent to defraud, or through the cumulative effect of a large number of falsehoods in a debtor's schedules as evidence of a reckless disregard for the truth. *In re Crumley*, 428 B.R. 349, 366–67 (Bankr. N.D. Tex. 2010) (citing *Sholdra,* 249 F.3d at 383). At trial, Defendant testified that she relied on financial documents from her accounting professionals as well as Green Energy Xperts, while attempting to fill out her Schedules and SOFA's as accurately as possible. Moreover, Defendant specifically testified she had no actual intent to defraud her creditors. Having observed Defendant through two days of trial, the Court is satisfied that Defendant possessed no actual intent to defraud creditors. Therefore, fraudulent intent under § 727(a)(4) must be demonstrated through evidence of Defendant's reckless disregard for the truth.

The denial of a discharge—the "death penalty" sanction of bankruptcy—must not be undertaken lightly. *Crumley*, 428 B.R. at 367. (citing *Washington 1993, Inc. v. Hudson (In re Hudson),* 420 B.R. 73, 100 (Bankr. N.D.N.Y. 2009)). Unquestionably, a debtor's paramount duty is to carefully consider all questions posed on the petition, schedules, and statements, and to verify the information listed is correct. *Morton v. Dreyer (In re Dreyer),* 127 B.R. 587, 593–94 (Bankr. N.D. Tex. 1991). Nevertheless, "[i]t may be close to impossible to produce Schedules and SOFAs that contain no mistaken information." *Cadle Co. v. Preston–Guenther (In re Guenther),* 333 B.R. 759, 767–68 (Bankr. N.D. Tex. 2005)). In other cases, such as *Crumley*,

reckless disregard for the truth was found where the Debtor prepared his SOFA's using "gest guesstimate" figures, and "never attempted to reconcile all of his sources of income prior to trial." 428 B.R. at 367 (denying discharge to the husband under § 727(a)(4)(A) for reckless disregard).  That is not this case.

Here, Defendant credibly testified that she based her reported income on financial records obtained from Green Energy Xperts after she sold the business in 2017. Moreover, no evidence was presented that Defendant ever received or saw a W2 or 1099 from Green Energy Xperts. Further, the evidence indicates that the IRS Wage Transcript relied on by Burkhart Peterson to prepare Defendant's 2017 tax return was ordered months after Defendant submitted her Initial SOFA and Amended SOFA. Moreover, Defendant as well as multiple tax professionals from Burkhart Peterson testified regarding Defendant's lack of education and sophistication— especially as it pertains to accounting and tax information. ***Crumley***, 428 B.R. at 368 (no finding of reckless disregard for the wife was supported by her lack of "involvement in, or knowledge of, the Debtor's financial affairs.").

Nevertheless, Defendant's 2017 tax return indicates she received $14,000 in wages from Green Energy Xperts, Inc. (Ex. 30, at JR213). Moreover, Defendant's 2017 tax return indicates she received $12,000 in dividends from Green Energy Xperts, Inc. (Ex. 30, at JR205, JR212). While Defendant's involvement and role within Green Energy Xperts is questionable, the evidence clearly shows Defendant received fourteen (14) checks from Green Energy Xperts for an identical amount of $816.38.  (Exs. No. 12, at WF000364, 373, 389, 439, 458, 495, 525, 551, 580, 604, 645, 674, 703, 734). [11]

---

[11] Notably, an examination of the Green Energy Xperts' checks and withdrawals shows $14,000 in wages for January to May 2017, there is no record Defendant actually received $12,000 in dividends.

The evidence introduced at trial establishes that Defendant received more than $4,681.90 in wages and dividends for 2017. *See **id.*** Moreover, Defendant testified that for the months leading up to the sale of Green Energy Xperts in 2017, she performed work for Green Energy Xperts in reconciling her company's bank accounts. Defendant's testimony acknowledged she not only received fourteen (14) paychecks from Green Energy Xperts in 2017, but also reconciled the Green Energy Xperts' bank accounts reflecting these payments. The Court does not question whether Defendant is educated or sophisticated when it comes to corporate finance or tax matters—she is not. Nevertheless, Defendant's testimony and conduct reveal she considered herself competent to look through corporate bank accounts. Accordingly, Defendant could have and should have exercised a similar level of diligence and care in examining her personal bank accounts and filling out her Schedules and SOFAs. Moreover, Defendant testified that her reason for requesting the QuickBooks files, was because she believed her 2016 tax liability was excessive. (*See* Ex. 29).  Believing the Green Energy Xperts QuickBooks were incorrect—as to tax liability—Defendant nevertheless relied on these same records when filling out her Bankruptcy records. Moreover, Defendant testified that she did not believe she needed to consult any other records to satisfy her income reporting requirements. The Court does not find this testimony credible. While the Court does not find these actions constitute actual fraudulent intent, at a minimum Defendant's actions—or lack thereof—display a reckless disregard for the truth.

Accordingly, the Court finds Defendant violated 11 U.S.C. § 727(a)(4)(A) by knowingly and fraudulently making a false oath or statement regarding her wage income from Green Energy Xperts.  Therefore, Defendant's discharge is denied under § 727(a)(4)(A).

### D.  11 U.S.C. § 727(a)(5)—Transfers from Large Loss Consulting.

Finally, § 727(a)(5) provides that a debtor will be denied a discharge where the debtor fails to explain satisfactorily the loss of assets or deficiency of assets to meet the debtor's liabilities.  Section 727(a)(5) does not require specific allegations of fraud but does require that the plaintiff identify which assets have been lost.  *See Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) (denial of discharge warranted on fraudulent withholding of information).

Trustee bears the initial burden to show some evidence that specific assets were lost, at which point the debtor must satisfactorily explain what happened to the assets.  *See Chalik*, 748 F.2d at 619 (denial of discharge warranted for failure to explain loan of $130,000 to debtor).  The burden on the debtor is to explain satisfactorily to the Court what has happened because the debtor has access to the operative facts.  *Poolquip-McNeme, Inc. v. Hubbard (In re Hubbard)*, 96 B.R. 739, 742 (Bankr. W.D. Tex. 1989).

In the Complaint, Trustee states "[f]or example, Plaintiff alleges Defendant has not satisfactorily explained the financial transactions regarding Large Loss Consulting." (ECF No. 1, at ¶ 83). Specifically, the Joint Pretrial Order alleges "Defendant cannot satisfactorily explain all the financial transactions of Large Loss Consulting. Defendant denies that she cannot satisfactorily explain all of her financial transactions. Defendant asserts that she cannot explain all of the financial transactions of Large Loss Consulting agreement because it was not her business and she had nothing to do with its operation." (ECF No. 23, at ¶ 6.3). Moreover, the Joint Pretrial Order specifically addresses the transfer of $215,575.73 from Large Loss Consulting to Your Roof Warranty, LLC, dba Large Loss Consulting Group, and the payment of $17,480.00 from Large Loss Consulting to Roger Roberts. (ECF No. 23, at ¶¶ 5.42, 5.65).

24

As previously discussed, the evidence submitted at trial shows that on September 29, 2017, Large Loss Consulting deposited a check payable to "Large Loss Consulting Group"—the dba of Your Roof Warranty—for $264,575.73, and that a check dated September 30, 2017 for $215,575.73 was then written to Your Roof Warranty, and deposited into Your Roof Warranty's newly established bank account the next business day. Next, the testimony at trial was that Roger Roberts' RV was used to house Large Loss Consulting contractors in Odessa, Texas. Then, after transferring the RV to a Large Loss Consulting contractor for payment of services rendered, Large Loss Consulting issued a check to Roger Roberts. No evidence was submitted to contradict Defendant's explanation. Moreover, Defendant and her husband testified at trial that Large Loss Consulting was created to complete "eight or nine" roofing projects assigned from Green Energy Xperts. The Court is satisfied that Defendant testified credibly and satisfactorily based on her limited knowledge regarding the specific transactions and loss of assets from Large Loss Consulting. Therefore, the Court cannot find that Debtor's discharge is denied under § 727(a)(5).

## CONCLUSION

For the reasons stated herein, the Trustee's Complaint pursuant to 11 U.S.C. § 727 is GRANTED IN PART and DENIED IN PART. Specifically, the Trustee's Complaint pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), (a)(5) is DENIED. Trustee's Complaint pursuant to 11 U.S.C. § 727(a)(4)(A) is GRANTED. Therefore, Defendant's discharge pursuant to 11 U.S.C. § 727(a) is hereby DENIED. All other relief is DENIED.

# # #